COLUMBIA DIGGER CO. v. SPARKS et al.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1915.)

No. 2560.

1. PRINCIPAL AND SURETY ⬅113—RIGHTS OF SURETY—APPLICATION OF PAYMENTS.

Sureties on the statutory bond of a contractor for a public improvement, conditioned for the faithful performance of the contract and the payment of all claims for labor and materials, have the right to have payments made by the contractor to a materialman, from proceeds of the contract applied in payment for material furnished under such contract and are not bound by an application of such payments to a preexisting indebtedness.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 235–239; Dec. Dig. ⬅113.]

2. COURTS ⬅365—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

A federal court should not refuse to follow a rule established by the Supreme Court of a state on the faith of which the parties presumably contracted, unless that rule is against the very decided weight of authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ⬅365.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

Rudkin, District Judge, dissenting.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action at law by the Columbia Digger Company against M. R. Sparks and C. A. Blurock. Judgment for defendants, and plaintiff brings error. Affirmed.

The plaintiff in error commenced an action against the defendants in error to recover the sum of $6,189.88 alleged to be due for crushed rock which it had furnished to certain contractors in a public improvement in the city of Vancouver, Wash.; the defendants in error having been the sureties on the bond given by the contractors in pursuance of the provisions of chapter 6, title 8, Remington & Ballinger's Annotated Code and Statutes of Washington. It was alleged in the answer of the defendants in error that an agreement had been entered into between the plaintiff in error and the contractors to the effect that the money received from time to time by the contractors upon the estimates of the city engineer was to be applied upon a previous unsecured indebtedness of the contractors to the plaintiff in error, and that the plaintiff in error would look to the sureties for the material furnished for the improvement, and that such agreement was without the knowledge or consent of the sureties, and that payments from time to time were made to the contractors by the city, based upon the engineer's estimates, and that the contractors paid the money so received by them from the city to the plaintiff in error, and that the sum so received was in excess of the cost of the material furnished by the plaintiff in error, which was used in the improvement of the street. These allegations were denied by the plaintiff in error. Upon the issues presented, a jury trial having been waived, the court made findings of fact, the substance of which are as follows:

That the contractors furnished a bond as required by the provisions of the law of Washington above referred to, and that the defendants in error were the sureties on such bond; that the contractors abandoned the contract, and the sureties were required to and did complete the improvement; that while the contractors were engaged in carrying out the contract they purchased from the plaintiff in error crushed rock amounting to the sum of $6,852.38; that after entering into the contract the contractors entered into an arrangement with the Vancouver Trust & Savings Bank, of Vancouver, Wash., whereby the monthly estimates coming from said improvement were assigned to said trust and savings bank, and in consideration thereof the trust and savings bank advanced money from time to time to the contractors for the carrying out of said contract, and for the payment of labor and material used and expended in the improvement; that the money received from the improvement by the said trust and savings bank, and by it paid to the contractors and to their creditors, was a sum far in excess of the value and cost of the material furnished by the plaintiff in error and used in the improvement; that the trust and savings bank paid to the plaintiff in error a sum in excess of the amount due the latter for the crushed rock furnished by it, and which was used in making the improvement; that the money so paid to the plaintiff in error was money which was paid by the trust and savings bank against the estimates for the improvement as the work progressed; that estimates were furnished by the city engineer, and the money paid to the plaintiff in error through the trust and savings bank was realized from the work and improvement on account of which the defendants in error were sureties, and were the same moneys for the collection and payment of which the sureties were obligated; and that the amount thus paid to the plaintiff in error by the trust and savings bank from money earned for improvement was in excess of the material furnished by the plaintiff in error and used in making the improvement.

From these findings of fact the court concluded that the money so received by the plaintiff in error from the city of Vancouver should be applied in payment for the material furnished by it and used in the improvement; that the plaintiff in error has received from money earned in making the

improvement a sum in excess of the material furnished and used in the improvement, and thereby plaintiff in error's claim is liquidated. A judgment was entered for the defendants in error for costs.

R. R. Giltner, Russell E. Sewall, and Guy C. H. Corliss, all of Portland, Or., for plaintiff in error.

Miller & Wilkinson, of Vancouver, Wash., for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] In determining the nature of the obligation of the sureties upon the bond the court below followed the decision of the Supreme Court of Washington in Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 Pac. 460. The court in that case had under consideration the provisions of a bond given under the same statutory provisions as was the bond in the case at bar. The court held that where a surety company guarantees the faithful performance of a contract pursuant to the statute for the benefit of laborers and materialmen, and the contractor pays money received upon the contract to a party who furnished material for the improvement, and to whom the contractor was also indebted upon an old or unsecured account, the surety is not bound by an application of the money to the old account, but is entitled to have the same applied on the contract in discharge of its liability. Said the court:

"The Ætna Indemnity Company did not undertake to secure the payment to the respondent of any old claims which were then due and unsecured, or any claims other than the one which was the subject of the contract."

It is urged that Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 Pac. 460, so followed and applied by the court below, is against the weight of authority. It is of course the general rule, as stated in 30 Cyc. 1228, 1233, and cited by the plaintiff in error, that a debtor paying money to his creditor has the primary right to direct the application of the payment, and that if he fail to make specific appropriation thereof the creditor may apply the payment to either of two or more debts which are owing to him from the debtor. But in 32 Cyc. 171, another doctrine is expressed which is directly applicable here. It is this:

"Where a surety has become responsible for the payment of money by the principal, and the latter receives money under his contract, which he pays over, the creditor or obligee has no right to apply such payments in any other way than to the relief of the surety."

To sustain the contention that Crane Co. v. Pacific Heat & Power Co. is against the weight of authority, three cases are principally relied upon: Merchants' Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624; Bankers' Surety Company of Cleveland, Ohio, v. Maxwell, 222 Fed. 797, —— C. C. A. ——; People v. Powers, 108 Mich. 339, 66 N. W. 215. The Minnesota case announces the general rule that a surety cannot direct the application of payments made by a principal to another, and that he is bound by any application made by the principal

and the creditor, or either of them; but the court goes on to say that this rule applies only to cases where the principal makes the payment from funds which are his own, free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable, and that where there is a special equity in favor of the surety the latter is entitled to have the money applied according to that equity. If, as we hold, there was in the case at bar an equity in favor of the sureties to have the money applied in payment of the liabilities incurred by the contractor under the contract, the decision in the Minnesota case is authority in support of the doctrine last cited from Cyc. rather than against it. In Bankers' Surety Co. of Cleveland v. Maxwell there was no discussion of the question of the equitable rights of a surety in the application of payments. What the court held was that where one has funds in his hands belonging to a party who is indebted to him, a portion of which is secured and a portion unsecured, in the absence of a special direction from the debtor as to how the application should be made, he may apply such funds to the payment of his unsecured claim.

But the case principally relied upon is People v. Powers. In that case it appears that the bond was one to secure the payment by a paving contractor and subcontractors for all labor performed and material furnished upon a contract let by the city for the improvement of a street. The court held that the liability of the sureties on such a bond was not affected, as against the claim of a materialman, by the fact that the latter had received payment for an antecedent indebtedness against the contractor out of funds realized by the latter under his contract. It would seem that the conclusion of the court was principally influenced by the peculiar provisions and terms of the bond. Referring to cases cited to the contention that the payment of the antecedent debt was inequitable, the court said that those cases differed from the case at bar for the reason that in the cases cited:

"There was privity of contract between the sureties and the obligee, and the bond upon its face undertook that the contract should be performed. By accepting it the obligee was in duty bound not to vary the contract in such a way as to increase the liability of the sureties."

And the court said that in the case of People v. Powers then under consideration, there was no actual privity of contract between the contractor and the sureties, unless the statute can be said to create one by requiring the bond, which was evidently intended for the former. In that respect People v. Powers differs from the present case, in that the sureties in the latter not only undertook and covenanted that the contractors should faithfully perform their contract, and should pay all claims for labor or work or material on account of subcontractors, materialmen, laborers, and contractors furnishing labor and material under said contract, but they covenanted with the city that the contractors should well and faithfully perform all the covenants and conditions in said contract, thus evidencing that "privity of contract between the sureties and the obligee" which was said to be lacking in People v. Powers.

The doctrine so announced in 32 Cyc. 171, and Crane Co. v. Pacific Heat & Power Co., is fully sustained by United States v. American Bonding & Trust Co., 89 Fed. 925, 32 C. C. A. 420, a case in which the Circuit Court of Appeals for the Fourth Circuit held that, where a firm supplied a contractor with materials for work, with reliance on the security furnished by the contractor's bond which was conditioned on full payment for work and materials, and payments were made by the contractor to the firm but were applied on a pre-existing debt, the firm could not recover on the bond. A similar state of facts existed in the case at bar for Hackett testified that he came to Vancouver and learned of the bond, and that the sureties were responsible, and that, relying upon the faith of the bond, he sold the material, and that he had an understanding with Rector that the plaintiff was to be paid for the material as the money was received from the city. In Bross v. McNicholas, 66 Or. 42, 133 Pac. 782, Ann. Cas. 1915C, 1272, the court said:

"While the authorities are not in harmonious accord, we think that, as a general proposition, the surety cannot direct the application of payments made by the principal and the creditor, or either of them. However, this rule is applicable solely in those cases where the principal makes the payment from funds which are his own and are free from any equity in favor of the surety to have the money applied in payment of the debt for which the surety is liable; but where the specific money paid, or property delivered to the creditor, is the identical money or property for the payment and delivery of which the debtor and his surety obligated themselves by the contract and undertaking, the surety is not bound by an application of the money or property to some other debt for which the surety is not liable. In such cases the surety is equitably entitled to have the money paid, or the property delivered, applied to the payment of the debt or the liquidation of the contract for which he is liable."

So in Crane Bros. Mfg. Co. v. Keck, 35 Neb. 683, 53 N. W. 606, the court held that:

"While as beween the debtor owing several debts and his creditor, where the former, at the time of payment of a sum of money, fails to designate the debt on which it is to be applied, the latter may do so, yet there is an exception to this rule, as where the money was received by the debtor from a third party whose property would be liable for the debt in case the money was not applied upon the third party's liability."

In First Nat. Bank v. City Trust, Safe Deposit & Surety Co., 114 Fed. 529, 52 C. C. A. 313, this court affirmed the equitable rule, which in its principle is applicable to the case at bar, that the claim and equity of the surety in the fund to be created arises when he enters into the contract of suretyship, and that subsequent to that date the contractor has no power to create a lien upon the payments to be made by the city and to make it paramount to the lien of the surety.

[2] This review of the authorities shows that the decision in Crane Co. v. Pacific Heat & Power Co. is not against, but is in accord with, the weight of authority. Not only that, but it announces a sound doctrine, which, in justice, should be applied to all such contracts as that which is here under consideration. That doctrine has become the settled rule in Washington, and the sureties on the contract in question had the right to rely upon it as the law of that state, and we may

assume that they did so when they became sureties upon the contract. A federal court ought not to upset the rule thus established by the Supreme Court of a state for the guidance of its own citizens, unless that rule is against the very decided weight of authority. In Detroit v. Osborne, 135 U. S. 492, 498, 10 Sup. Ct. 1012, 1013 (34 L. Ed. 260), it is said:

"There should be, in all matters of a local nature, but one law within the state; and that law is not what this court might determine, but what the Supreme Court of the state has determined."

And in Equitable Life Assurance Soc. v. Brown, 213 U. S. 25, 44, 29 Sup. Ct. 404, 410 (53 L. Ed. 682), the court said:

"The decisions of the highest court of New York are therefore binding upon this court as to the meaning and effect of the charter of the defendant, and as it is a New York company, and the contract is a New York contract, executed and to be carried out therein, its meaning and construction, as held by the highest court of the state, will be of most persuasive influence, even if not of binding force."

The judgment is affirmed.

RUDKIN, District Judge (dissenting). Reduced to its simplest form, the question before the court is this: A firm of contractors enters into a contract with a municipal corporation for the improvement of one of its streets, and executes the customary statutory bond, conditioned for the payment of claims for labor and material. A materialman furnishes material to the contractors, a part of which is used in this street improvement, and a part is otherwise used or disposed of. The contractors make payments from time to time to the materialman, without any designation or application of the payments so made, and the materialman, without notice or knowledge of the source from which the contractors received their money, applies the payments on account of the material which was not used in the street improvement. I say without notice or knowledge of the source from which the money came, because notice is neither alleged in the answer, nor found by the court, and the pleadings and findings must support the judgment. Under these facts the court holds that payments thus made and applied by the creditor must now be reapplied on account of material used in the street improvement and secured by the bond.

From this conclusion I feel constrained to dissent. If the materialman had notice or knowledge that the money received from the contractors came from the city contract, there would be some equity and justice in requiring it to apply the payments on the account secured by the bond; and some of the authorities so hold, notably the Supreme Court of the state of Washington, as appears from the case of Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 Pac. 460, cited in the majority opinion. If the case stopped here, I might acquiesce in the judgment, although I do not concede that the ruling is supported by the weight of authority. In People v. Power, cited in the majority opinion, the statute was the same, the bond was the same, and the facts were the same, yet the court upheld the right of the creditor to apply the payments as he chose, for reasons which I deem unanswer-

227 F.—50

able.  In the Bankers' Surety Case, from the Fourth Circuit, the law was the same, and the facts were even stronger in favor of the surety than here, for there the employé, who was seeking to recover on the bond, himself drew the money which he applied on a pre-existing debt, and therefore had full knowledge of the fact that the money came from the government contract.  The fact that the court in that case was content to rest its decision on an elementary principle of law does not detract from the weight of the authority, unless that principle was misapplied.  There is a direct analogy between an action on a bond of this kind and a mechanic's lien case, the bond taking the place of the lien, and the surety taking the place of the owner.  And if the surety has a right to insist that money paid by the city shall be applied on claims secured by the bond, the owner of a building has an equal or even greater right to insist that money paid by him shall be applied on claims for which his property is liable; but the rule of law is otherwise:

"Where the lien claimant at the time of receiving a payment from the owner or the contractor has other claims against the person by whom such payment is made, the effect of the payment upon the lien depends upon whether the payment was applied to the lienable claim, and the application of such payments is governed by the general rules on the subject.  If the debtor applies the payment, his application governs; but if he does not do so, the creditor may apply the payment on whichever debt he chooses, and if he applies it to a debt other than the one for which the lien is claimed, as he is entitled to do, the payment does not discharge or reduce the lien."  27 Cyc. 294, and cases cited.

But, whatever the rule may be, where the creditor has notice of the source from which the payments came, the rule is well settled that in the absence of such notice he may apply the payments as he chooses, and his application will govern.  Such should be the law.  The contractor is not required to pay over the money received from the city to laborers or materialmen by either the statute or the conditions of the bond.  He is left at liberty to conduct his own business in his own way.  The money received on the contract is his to apply or spend as he chooses.  It was conceded on the argument that the contractors might have applied the money received from the city in payment of their private debts, other than the secured debt, and that the sureties could not complain.  It was likewise conceded that, if the contractors owed the plaintiff in error the unsecured debt only, they might pay that debt, and the plaintiff in error might accept the payment with full knowledge of the fact that the money was received from the city contract.  But because the plaintiff in error happened to hold two claims, instead of one, it is denied that privilege.

The decision of the majority exhibits a tender regard for the rights of sureties, but a woeful disregard for the obligation of private contracts.  It places restraints on the free use and exchange of money which have not heretofore received judicial sanction.  In that respect it stands unsupported and alone.  In Crane Co. v. Pacific Heat & Power Co., supra, the answer alleged that at the time of the application of the payments the creditor knew that the money came from the board of directors of the school district on account of the school

contract, which was secured by the bond there in suit. True, the opinion seems to attach no importance to that averment; but the ruling of the court was explained in Hughes & Co. v. Flint, 61 Wash. 460, 112 Pac. 633, where the same principle was involved. In the latter case, speaking through Mr. Justice Chadwick, the court said:

"In Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95 [78 Pac. 460], it was held that the answer of a surety, alleging that plaintiff had received and credited money paid on a particular contract, *knowing its source*, to other accounts, stated a defense; and, further, that *knowing the source of the payment* the materialman could not apply payments under the general rule to the prejudice of a surety on the contractor's bond. In principle that case is like unto this. The right to apply the payments to the older or other accounts was denied, *because the lien claimant had notice that the money was paid on the contract which the surety company had underwritten*. The owner of land, who lets a contract for the erection of a building upon it, is an involuntary debtor, made so by the terms of a statute; and where he has made a payment on his contract, and the amount thereof has passed to the materialman *having notice of the contract, and the source of the payment*, or the payment being made by check bearing words which import an equity in the drawer, so as to exempt it from the provisions of the Negotiable Instruments Act, equity and fair dealing demand that the owner should not be made to pay his debt over again."

It will thus be seen that the creditor is only denied the right to apply payments where he has actual notice of the source from which the money came. It is apparent from the opinion in United States v. American Bonding & Trust Co., 89 Fed. 925, 32 C. C. A. 420, also, that the creditor had notice that the money came from the government contract. Besides, there were many equities in that case in favor of the surety that are not found in this record, and, as already stated, in a later case from the same court, a different conclusion was reached under facts similar to those presented in the case at bar. Under the decision of the majority, if a materialman furnishes material to a contractor who is constructing different buildings subject to the lien laws of the state, or different public works secured by bond as in this case, he must, before accepting a payment, inquire where his debtor received the money. This would ordinarily be deemed an impertinence at best, but even the impertinence will not avail; for, under the ruling of the majority, all payments must be applied on the secured claims under an inexorable rule of law.

I think I have shown that the decision of the majority is not in harmony with the decisions of the Supreme Court of the state; but, even if it were, the question here involved is one of general law, which must be decided the same way by this court in every case, whether the question arises in an action on a bond given under the federal statute or under the statute of one of the states. In my opinion the special findings disclose no defense to the action, and the judgment should be reversed.