[No. 17143.    Department Two.    August 28, 1922.]

J. F. KANE & COMPANY, *Respondent,* v. F. R. WOODBURY
LUMBER COMPANY, *Appellant,* NATIONAL SURETY
COMPANY, *Respondent.*[1]

MECHANICS' LIENS (77)—EXTINGUISHMENT OR LOSS—PART PAY-
MENT—APPLICATION.    A materialman furnishing materials to the
owner cannot claim a lien therefor, where it continually received
payments from the contractor from sums received by him from the
owner for more than sufficient to satisfy the account, under circum-
stances from which it must have known the source of the payments,
which it wrongfully applied on other accounts against the contractor,
upon which the time for filing liens had expired.

SAME (77).    In such a case, evidence that the materialman's
manager was intimately acquainted with the contractor occupying
adjoining offices, and repeatedly urged him to make the payments
for the materials supplied, and that $15,000 had been paid without
any credit on the account, overcomes the manager's evidence that
he had no knowledge of the source of the payments.

Appeal from a judgment of the superior court for
Okanogan county, Carey, J., entered November 22,
1921, upon findings in favor of the plaintiff, in an
action on a contractor's bond, tried to the court.    Af-
firmed.

*Ferris & Ferris, Wakefield & Witherspoon,* and
*William O'Connor,* for appellant.

*P. D. Smith,* for respondent.

Hovey, J.—Respondent Kane & Company contracted
with one Colyar to erect a building in the city of Oka-
nogan, and Colyar secured from appellant, Woodbury
Lumber Company, materials of a total value of about
$16,000.    The first materials were furnished on Janu-
ary 16, 1920, and the last on November 26, 1920.    Pay-
ments were made from time to time by respondent to

[1]Reported in 208 Pac. 1107.

Colyar, and Colyar in turn made certain payments to appellant, and the present controversy involves the proper application of certain of the payments so received by appellant. Appellant filed a lien upon the property upon which the building was located, claiming a balance due of $9,460.56, and thereafter respondent brought an action against appellant and the surety on the contractors' bond to have the rights of the respective parties determined. The issues between respondent and the surety company not being fully made up, it was agreed that the case should be disposed of on the issues between respondent and appellant so far as their rights are concerned. The trial court found that there was a balance due appellant of $2,704.12, and granted foreclosure of the lien for that sum and the costs.

Appellant carried a good many accounts with Colyar which were unsettled at the time the payments now in controversy were made, and each piece of work was carried under a separate heading with a designation of the particular work for which the materials were supplied.

On March 4, 1920, respondent paid the contractor $3,000, and on the same day Colyar paid to appellant $2,000. On June 6 respondent paid Colyar $4,500, and on June 8 the latter paid to appellant $3,000, and on August 20 respondent paid to Colyar $5,000, and on the following day Colyar paid to appellant $4,000. The first and second of these payments received by appellant were all applied to accounts other than that of respondent's job, and of the last payment $2,396.66 was credited to the account kept of the respondent's job and the balance was applied upon other accounts owing by Colyar to appellant. Colyar left the scene of his activities in December, 1920.

Appellant contends that the facts of the case bring it within our decision in *Sturtevant Co. v. Fidelity & Deposit Co.*, 92 Wash. 52, 158 Pac. 740, L. R. A. 1917C 630, wherein it was held that the materialman could apply a credit upon his older accounts with the contractor where he had no knowledge as to the source from which the money came.

In this case, however, the trial court found as to each of the payments that appellant had full knowledge that the same came from and were paid by the respondent to be applied on account of materials furnished by appellant, and that appellant knowingly and wrongfully misappropriated the payments which they credited to other accounts.    Appellant attacks this finding as not being supported by the evidence.

The evidence shows that Okanogan is a place of one thousand or twelve hundred people; that the manager of appellant corporation had lived in the city for several years, and lived there during the time covered by the incidents material here; that the office of the company adjoined the dwelling house of the contractor, Colyar, and was but a very short distance from the building for which the materials were supplied; that the manager was upon intimate terms with the contractor and had assisted him in getting a contract a short time previously; that the manager repeatedly urged respondent to make payments, and made frequent inquiries as to respondent's ability to make payments at the bank where all parties kept their accounts; that none of the other accounts for material at all approached respondent's account in magnitude; that the time for filing liens had expired on all accounts except two when appellant commenced receiving the payments in question, and as to one of these latter accounts the manager, after attempting to have a payment made

direct by the owner of the property, consented that he might make it to the contractor and that he would not claim any lien against the property; that, according to the books as kept by appellant, materials had been supplied to the extent of $15,000 before the date in August when the last of the disputed payments was made, without any sum whatever being credited upon this account. This manager was the main witness for appellant and testified that he had never asked Colyar for any payments on respondent's contract, and had never endeavored to learn, and had no knowledge whatever of, the source from which they came; that, though he had interviews by appointment with Colyar for the express purpose of obtaining money, he never asked nor was told the sources from which the money was to come, and testified to many other matters in which he was expressly contradicted by other testimony.

In addition to the superior advantage the trial judge had of estimating the value of such testimony, we think the other facts in the case fully warranted the trial court in refusing to accept this testimony and in making the finding complained of.

The owner made payments on his contract, the amounts passed to the materialman having notice of the contract and the source of the payments, and this case is governed by our decisions in *Crane Co. v. Pacific Heat & Power Co.*, 36 Wash. 95, 78 Pac. 460; *Hughes & Co. v. Flint*, 61 Wash. 460, 112 Pac. 633.

The judgment is affirmed.

PARKER, C. J., MAIN, HOLCOMB, and MACKINTOSH, JJ., concur.