[No. 510.  Decided April 7, 1892.]

JAMES P. DE MATTOS, *Appellant*, v. THE CITY OF NEW
WHATCOM AND THE CITY COUNCIL THEREOF, *Respond-
ents*.

MUNICIPAL   CORPORATIONS—CONSOLIDATION—INDEBTEDNESS—VALIDITY
—RATIFICATION OF UNAUTHORIZED DEBT.

Where two cities have legally consolidated into one, the new
corporation takes the property and assumes the lawful debts of the
former corporations, and has authority to issue its bonds to pay
the debts thus assumed, up to one and one-half per cent. of the tax-
able property within its limits, without a popular vote.

The indebtedness of a city in excess of one and one-half per cent.
of its taxable property cannot be assumed on consolidation with
another city by the new corporation resulting from the consolida-
tion.

The submission by the consolidated corporation to the voters of
one of the former cities thus consolidated of the question of validat-
ing the unauthorized indebtedness of such former city in excess of
one and one-half per cent. is void, as, under the act of March 7, 1891
(Laws 1891, p. 267), the submission should be to all the voters in the
consolidated corporation.

Charging the indebtedness of each of the former cities to the
property within its limits is a regulation in accordance with equity
and justice, and is not unconstitutional.

*Appeal from Superior Court, Whatcom County.*

The facts are stated in the opinion.

*Bruce & Brown*, for appellant.

*E. H. Farnham*, for respondent.

The opinion of the court was delivered by

STILES, J.—The facts in this case as shown by the
record, when placed chronologically, are as follows: The
city of Whatcom was incorporated by an act of the legis-
lature of the territory, on the 24th of November, 1883,
and embraced within its territorial limits a certain area.  See

Laws 1883, p. 142, § 1.   On the 3d day of May, 1890, the city of New Whatcom was incorporated as a city of the third class under the act of March 27, 1890, and embraced within its territorial limits a certain area.   In territorial possession, the latter city surrounded the former, in conjunction with the waters of Bellingham Bay, so that taking the bay as one line of the city of Whatcom, the city of New Whatcom inclosed it on three sides in form of a crescent.   On the 29th day of December, 1890, steps having been properly taken for that purpose, an election was held in these two municipalities, resulting in their consolidation into the present defendant city, conformably to the provisions of § 10, act of March 27, 1890.   After the vote consolidating the former municipalities was taken, and on the 10th day of February, 1891, the defendant city formally organized as a city of the third class, and has since that time controlled and exercised its authority over the territory embraced within the two former cities.

Prior to the consolidation of the former cities, and the formation of the present city, the city of Whatcom had become indebted in excess of one and a half per cent. of the assessed valuation of all the property within said city, to the sum of $25,199.23.   It had an indebtedness in addition equal to one and a half per cent. of its valuation, aggregating $19,844.81.   The city of New Whatcom had become indebted in the sum of $43,650.08, which, however, was within the one and a half per cent. indebtedness that, under the constitution, it was authorized to incur.   At the time of the consolidation there was outstanding indebtedness against the city of Whatcom, for which warrants had not been issued against any of her funds, aggregating the sum of $1,800.86; and there was outstanding indebtedness incurred by the former city of New Whatcom, for which warrants had not been issued, aggregating the sum of $1,988.73; and after the organi-

zation of the defendant city, it issued its warrants to various parties, for the sums mentioned, payable out of the treasury of the city, but payable only from the revenue collected from the territory of the former cities, respectively. These debts for which these latter warrants were issued are part of the principal indebtedness before referred to. These warrants were issued between the 7th day of March, 1891, and the 5th day of December, 1891, at different times, and represented debts that accrued prior to the 26th of February, 1891.

After the organization of the defendant city, an ordinance was passed, submitting to the electors the questions whether the indebtedness of the former city of Whatcom in excess of her constitutional limit should be ratified and validated; and whether the defendant should issue bonds for funding the indebtedness of both former cities. In accordance with the provisions of the ordinance, at the election thus held, the question as to whether the indebtedness of Whatcom should be ratified and validated was submitted to and voted upon by the electors resident within the territorial limits of the former city of Whatcom, and none other; the question as to whether the legal indebtedness of the former cities should be funded was voted upon by all the electors of the defendant city alike. The election thus held resulted in a ratification by the electors resident in the old city of Whatcom of the excess of indebtedness, and in an affirmative vote for the funding of all the indebtedness of the former cities by the electors throughout the city. Conformably to the election, the council engraved bonds, and offered them for sale, providing in the ordinance, and also upon the face of the bonds, that the bonds for the indebtedness of the former city of Whatcom should be paid, both principal and interest, from revenues and taxes, levied against the property situate within the territory of the former city of Whatcom; and

9—4 WASH.

the bonds for the indebtedness of the former city of New Whatcom should be paid out of the revenue and taxation derived from the territory embraced within the former city of New Whatcom. Under these circumstances the appellant, who is a resident of the defendant city, and the owner of taxable property in each of the former corporations, seeks to enjoin the issuance of these bonds. His complaint was demurred to in the superior court, and the demurrer was sustained.

In *State, ex rel. Cole, v. City of New Whatcom*, 3 Wash. 7, we held that the consolidation of the two municipalities was legally effected, the result being a new incorporation. This consolidation certainly destroyed the existence of both the old towns for every corporate purpose, and they could no longer contract, sue or be sued.

The next question which almost necessarily occurs as preliminary to the determination of this case is, what becomes of the lawful liabilities of the defunct corporations, as well as of the rights and property belonging to them. The act providing for the consolidation of cities (Gen. Stat., § 502), makes no direct provision upon either of these important matters, although the legislature had the most ample power to control them both, but as we shall hereafter be able to show, the subject was not lost sight of, and a sufficient expression was given to show the fair intent. The general rule with regard to corporations situated as these are is declared in unmistakable terms in *Mount Pleasant v. Beckwith*, 100 U. S. 514, to the effect that where a municipal corporation goes out of existence by re-incorporation, annexation or consolidation, either by direct action of the legislature, as was the method in that case, or by operation of general laws, as in this one, in the absence of statutory provision for its property and debts, the new incorporation takes the one and assumes the other. The reason for such a rule, so far as debts go, is that under

§ 10, art. 2 of the federal constitution, no state can pass a law impairing the obligation of contracts. It cannot therefore, by indirection, through the dissolution of a debtor municipal corporation, take away from the creditor his sole reliance for the payment of his debt, viz., the taxing power of the corporation. But if in place of the old there is a new corporate body at whose hands relief can be had, the constitutional requirement is satisfied and the contract is not impaired. The legislature of 1890, however, bore all this in mind and, in substance, covered the same ground. Sec. 502, above referred to, which is upon the subject of consolidation, expressly makes § 497 apply to every "such (consolidated) corporation." Sec. 497 was apparently framed with reference only to the re-incorporation of cities, under § 496, in pursuance of the classification policy recommended by the constitution. That section reads:

"SEC. 497. Any city or town organized under the provisions of § 496 of this volume of general statutes shall, for all purposes, be deemed and taken to be in law the identical corporation theretofore incorporated and existing, and such re-organization shall in no wise affect or impair the title to any property owned or held by such corporation, or in trust therefor, or any debts, demands, liabilities or obligations existing in favor of or against such corporation," etc.

Now add to this the proviso to the last clause of § 502, expressly made applicable to consolidations, and which reads:

"*Provided*, That no property within either of the former corporations so consolidated shall ever be taxed to pay any portion of any indebtedness of either of the other of such former corporations, contracted prior to or existing at the date of such consolidation;"

And we have a scheme clearly enough defined when the general rule of law before referred to is considered as it must be. In *City of Olney v. Harvey*, 50 Ill. 453; 99 Am. Dec. 530, it was held that upon the re-incorporation of

held that upon the re-incorporation of the town of Olney, by private act of the legislature, under the new name of the "City of Olney," and a new system of government, the town and city were the same municipality, that the property of the former passed to the latter, and that to propose that the creditors of the town could be set at defiance by the city "would be such a burlesque upon justice that the proposition needs but to be stated to be rejected." In that instance the ruling of the court was without any statutory provision on the subject, but here we have the legislative declaration that the city of New Whatcom "shall, for all purposes, be deemed and taken to be in law the *identical corporation* theretofore incorporated and existing," that is, it is identically Whatcom and New Whatcom, takes their property and assumes their indebtedness whether at the date of consolidation it existed in the form of warrants, or in some unliquidated form. This legislative provision avoids the construction of *Mount Pleasant v. Beckwith*, 100 U. S. 514, sought to be maintained by the appellant, that the new corporation is a trustee merely. It follows that the city of New Whatcom, through its council, had full authority to issue its bonds to pay the debts thus assumed by it, up to one and one-half per cent. of the taxable property within its limits, without any popular vote. Gen. Stat., § 708, *et seq.; Murry v. Fay*, 2 Wash. 352. To hold that it did not have this authority would be to place this city upon a disadvantageous footing as compared with other cities of the state, to all of which is accorded the right to fund their lawful indebtedness.

The next question is, what was the lawful indebtedness of the two towns. The complaint does not state the taxable values of the old towns, but it is said that warrants numbered from 1 to 76, inclusive, for $19,844.81 of the city of Whatcom exhausted the one and one-half per cent. limit of that corporation, and it follows, under the repeated decla-

rations of the constitution and the acts of the legislature, that the excess, $25,199.23, represented by warrants numbered from 77 to 398, inclusive, was, at least for the purposes of this case, void, and was not assumed by the consolidated corporation. It follows, also, that the warrants of the defendant city of New Whatcom issued by it to take up floating indebtedness of the old city of Whatcom in the sum of $1,800.86 were issued without consideration and are likewise void. It would appear from the complaint that neither the warrants issued by the old city of New Whatcom, amounting to $43,650.08, nor the amount of its floating indebtedness, $1,988.73, exceeded its one and one-half per cent. limit, and the action of the defendant city with regard to those items is therefore without objection.

It remains to be considered whether the action of the defendant council in submitting the question of validating the excess indebtedness of old Whatcom to the vote of the residents of that part of the new city was of any force. The act of March 7, 1891 (p. 267), gave to any city or town having a corporate existence on that day the right to validate unauthorized indebtedness in excess of one and one-half per cent. incurred prior to the passage of the act, where the only ground of invalidity was that the debt thus attempted to be incurred was thus in excess.

On that day, however, the city of Whatcom had ceased to exist, and could not act in pursuance of the statute. Its successor, it is true, was the identical corporation for the payment of all its lawful debts, but there is no provision of the act in question looking to such a case as this. The single point that the submission under the act must be to "the voters in such city or town," pierces through the council's action in this case, where the submission was to a part only of the voters, viz., those of Whatcom, and destroys its legality. To sustain such action there must be found express statutory authority for it. Constructions

and implications have no place in such matters, and cannot be invoked to piece them out.

One further objection is urged against the issuance of the proposed bonds, viz., that they are to be conditioned that a certain number of them will be made payable only out of taxes to be collected from property in Whatcom, and the remainder only out of taxes collected from property in New Whatcom. We assume that the statute will be followed in the issuance of these bonds; that they will be the bonds of the city of New Whatcom; that in particular § 713 will be observed as modified by the proviso to § 502; and that the ordinance to be printed upon each bond will show exactly where the funds are to come from for the payment of the principal and interest; if these things are done we see no ground for the objection. The matter of charging the indebtedness of each of the former cities to the property within its limits is a regulation merely, in accordance with equity and justice. *Adams v. Minneapolis*, 20 Minn. 484. Sec. 9, art. 7 of the constitution does not forbid such an arrangement. The "jurisdiction" in such a case has been, by the legislature, limited to the property within the old corporations, as of right it should be in the absence of some more specific provisions, for the payment of their debts.

The judgment of the superior court is reversed, and the cause remanded, with instructions to overrule the demurrer as to that part of the indebtedness of the city of Whatcom which exceeded the one and one-half per cent. limit of its indebtedness, and sustain it as to the remainder of the indebtedness proposed to be funded.

Anders, C. J., Hoyt, Dunbar and Scott, JJ., concur.