[No. 13637. Department One. February 6, 1917.]

NELSON & CASTRUP, *Appellants*, v. B. W. CULVER *et al.*, *Respondents*.[1]

MECHANICS' LIENS—RIGHT OF LIEN—ESTOPPEL—AUTHORIZING PAYMENT TO CONTRACTOR. A materialman is estopped to claim a mechanics' lien for the balance due on materials furnished for the erection of a house, where, upon request, he authorized the owner to pay the contractor, which the owner did, thereby altering his position to his detriment.

SAME—AGENT OF OWNER—ACTS OF CONTRACTOR. A contractor for the construction of a house who gave a worthless check to a materialman for materials furnished, is not the agent of the owner of the premises to such an extent as to make the owner responsible for the giving of the worthless check.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered April 11, 1916, upon findings in favor of the defendants, dismissing an action to foreclose a mechanics' lien, tried to the court. Affirmed.

*Flick & Frater*, for appellants.

*Tucker & Hyland*, for respondents.

MAIN, J.—The purpose of this action was to foreclose a lien for the sum of $189.85, the balance due for material used in a dwelling house erected for the defendants. The plaintiffs were copartners, doing business under the name of Nelson & Castrup. One of the defenses interposed was that of equitable estoppel. The cause was tried to the court without a jury, and resulted in a judgment dismissing the plaintiffs' action and canceling and setting aside the lien. From this judgment, the plaintiffs appeal.

On the second day of December, 1914, the respondent B. W. Culver contracted with one Victor R. Furness for the erection of a one-story frame dwelling house. During the time the contract was being performed, Furness purchased from the appellants material which was consumed in the erection

[1]Reported in 162 Pac. 978.

of the house.   At about the time the building was completed
by Furness, he requested the respondents to pay him the bal-
ance due on the contract.   This request was refused unless
Furness would secure the ratification and consent of the ap-
pellants.   Thereupon, Furness went to the appellant Nelson,
one of the copartners, and made, executed, and delivered to
him a check for the balance due, and received a receipt
acknowledging payment in full.   Furness presented the re-
ceipt to the respondents, who thereupon notified Nelson, and
inquired whether it was all right to pay Furness the balance
due him for the erection of the house.   After this conversa-
tion, the balance due upon the contract was paid to Furness.
The check which Furness gave the appellants was returned
by the bank upon which it was drawn, because of not sufficient
funds to cover it.

The principal, and, as it seems to us, the controlling ques-
tion in this case is whether the appellants are estopped to
foreclose the lien.   The testimony of Nelson and Culver is in
conflict as to the telephone conversation in which Culver
claims to have been authorized to pay the balance due upon
the contract to Furness.   Culver's version of this conversa-
tion, as it appears in the statement of facts, is this:

"The first thing I said 'Mr. Furness would be in to get
his money and wanted to know if it was all right' and he in-
terrupted and said 'Furness was to get the money Tuesday
afternoon' and I told him he hadn't but he would be there
Wednesday morning and was it all right.'   He said 'All
right, go ahead,' and I said, 'Do you authorize me to turn
this money over;' he said 'Sure.'   I says 'Who is speaking?'
he says 'Nelson' and I says 'All right, I will pay him the
money.' "

The trial court, who saw and heard the witnesses testify,
found that Culver did inquire of Nelson whether it was all
right to give Furness any balance due him, and thereupon
Furness was paid such balance in the sum of three hundred
dollars.   The court apparently believed the testimony of
Culver.   After a careful examination of the record, we can-

not say that the finding is not in accordance with the preponderance of the evidence. The question then arises whether, if Nelson authorized Culver to pay Furness, after the inquiry having been directed to him in that regard, the appellants are estopped from asserting a lien. Based upon this conversation, Culver altered his position by paying the money to Furness to his material detriment, if the lien can now be established. To permit the lien to be foreclosed under such circumstances would, in effect, work a fraud upon the respondents.

The appellants claim that they did not waive their lien, and rely upon Rem. Code, § 1143, which provides that a lien created by law is not discharged by the taking of a promissory note, or other evidence of indebtedness, unless such note, or other evidence of indebtedness, is expressly received as payment, and it is so specified therein. A number of cases are also cited upon the question of the waiver of a lien, but the question in the present case is not, as we view it, whether there was a waiver of the lien by the appellants, but whether they are estopped from asserting the lien. The case of *Gull River Lumber Co. v. Keefe*, 6 Dak. 160, 41 N. W. 743, is cited as being parallel to the case now under consideration, but that case is distinguishable in at least one material particular. There, there was no express authorization by the lien claimant to the owner to pay the contractor, as here.

There is some contention by the appellants that Furness was the agent of the respondents in such a sense that his act in giving the worthless check was their act. While the contract between Culver and Furness may not have been carefully drawn in some particulars, yet it is reasonably clear that it was not the intention of the parties thereto to make Furness the agent of the respondents to the extent that the giving of a worthless check by him was their act.

The judgment will be affirmed.

ELLIS, C. J., MORRIS, CHADWICK, and HOLCOMB, JJ., concur.