[No. 16357. Department One. July 21, 1921.]

F. J. CUMMINGS, *Appellant*, v. ARTHUR ERICKSON *et al.*,
*Respondents.*[1]

PARTNERSHIP (1)—THE RELATION—COMMUNITY OF INTEREST. A
partnership between farmers is not established by the fact that they
farmed certain tracts on shares, where it appears they kept separate
trading accounts, and also maintained a debtor and creditor account
between themselves.

FRAUDULENT CONVEYANCES (16)—PROPERTY TRANSFERRED—EXEMPT
PROPERTY. Grain needed for stock and seed by a farmer and house-
holder, being exempt from attachment or levy and sale on execu-
tion, under Rem. Code, § 563, could be transferred to a creditor to
apply on indebtedness to him, free from the lien of attachment or
execution levy.

PAYMENT (11) — APPLICATION — RIGHTS OF PARTIES — SECURED
DEBT—PRESUMPTIONS. Where a creditor, holding both secured and
unsecured claims against a debtor, allows part of the property on
which he has a mortgage to be sold and the proceeds are placed in
his hands to apply on the debtor's account, the creditor must apply
the proceeds to the secured debt, in the absence of an understanding
to the contrary.

Appeal from a judgment of the superior court for
Okanogan county, Neal, J., entered June 7, 1920, upon
findings in favor of the defendants, in an action for
an accounting, tried to the court. Affirmed.

*W. H. Patterson*, for appellant.

*W. C. Brown* and *P. D. Smith*, for respondents.

MACKINTOSH, J.—What, from the pleadings, seems to
be a Hyrcanian wood, becomes, after an investigation
of the record, a three-cornered controversy involving
an accounting. The appellant was a creditor of the re-
spondents Erickson; part of his claim being secured by
a mortgage, and part of it consisting of an open ac-
count. The respondent Urban also claimed to be a

[1] Reported in 199 Pac. 736.

creditor of the Ericksons, while the appellant contends that Urban and the Ericksons were partners in the conduct of a couple of farms in Okanogan county. The facts as found by the trial court (and which our review of the testimony does not warrant us in disturbing), may be summarized as follows: In January, 1917, the Ericksons had rented two tracts of land, one of them being rented on shares, the owner to receive one-third of the crop and the Ericksons two-thirds. The respondent Urban came to Okanogan county early in the winter of 1917, bringing with him several head of cattle. His purpose was to find a suitable farm, but being unable to do so, he "joined forces with the Erickson Brothers in farming the Huntley place and Indian allotment", and sold to the Ericksons several head of cattle and some horses for $1,575, the Ericksons becoming indebted for the entire amount. The arrangement between the Ericksons and Urban was that Urban was to receive an equal share with the Ericksons of the crops.

The Ericksons dealt at the merchandise store of the appellant, where they carried an open account, the unpaid balance of which, in 1916, amounted to $451.96. This indebtedness, in 1917, had increased to $1,315.25, and represented purchases for the benefit of the Ericksons. Urban traded at another town and had no connection with the account of the appellant. On November 27, 1917, the Ericksons gave a promissory note for the amount due the appellant, and secured by two chattel mortgages covering cattle, horses, machinery and automobile, and the future crops, and mortgages were also given to secure further advances in the sum of $500. During 1918, the Ericksons continued to trade with the appellant on open account, which, in December, 1918, amounted to $1,017.28. In November, 1918, the Ericksons informed the appellant that they would have

to dispose of some of the property covered by the mortgages in order to pay the note, and consent was given to this arrangement, and the receipts of this sale, amounting to $975, were credited by the appellant on the open account. In December, 1918, the Ericksons delivered to the appellant wheat of the value of $685.75; they then demanded from the appellant their note and mortgages, insisting they had been paid, and at this time the Ericksons were given a statement of their account by appellant, showing he had credited all the receipts from the sale of the mortgaged property and wheat on the open account, and claimed a balance of $343.47 due on the note and mortgage. The Ericksons objected to this, and in the spring of 1919, their objections not having been met, further negotiations were carried on between Ericksons and the appellant, the Ericksons all the time insisting that the mortgages had been paid. About May 1, 1919, cattle and horses owned by the Ericksons were turned over to Urban to apply on their debt to him, and in October, 1919, Urban advertised these cattle and horses and some machinery for sale.

The appellant started this action for his unpaid balance, claiming that there was a balance still owing him on the note, and that the property offered by Urban for sale was property upon which he held a mortgage. The 1919 wheat crop was threshed by Urban, and after paying the share due the landowners, the balance was taken by Urban to apply on the Ericksons' indebtedness to him.

It is the contention of the appellant (1) that Urban and the Ericksons were partners, (2) that the grain which was taken over by Urban was partnership property, and was not exempt from attachment and execution in an action upon the partnership debt, and (3) that the Ericksons, not having directed the application

of the proceeds from the sale of the mortgaged property to the satisfaction of the mortgage indebtedness, that it was in the power of the appellant to make that application upon the open account. The trial court concluded from the facts as they have been detailed, that no partnership existed between Urban and the Ericksons, and for that conclusion the evidence preponderates. That conclusion, of course, answers the first contention of the appellant. (2) It appearing from the evidence that the Ericksons were farmers and householders and needed the grain for themselves and their stock and for seed, they had a right to claim it as exempt from attachment and levy and sale on execution, under § 563 Rem. & Bal. Code, and being thus exempt in the hands of the Ericksons, they could transfer it to Urban to apply on their indebtedness to him. (3) The authorities are to the effect that where a creditor holds claims, some secured and some on open account, when funds of the debtor come into the creditor's hands, in the absence of any direction from the debtor, or any agreement as to how they shall be applied, that the creditor may apply them on either account at his option, but this rule is subject to certain exceptions, one of them (recognized by many authorities), is that where a creditor has allowed part of the property on which he has a mortgage to be sold and· the proceeds are placed in his hands in extinguishment of his debt, or to apply on the debtor's account, in the absence of an understanding to the contrary, the presumption must be that the proceeds will be applied to the secured debt. This court has recognized this distinction in the case of *Sturtevant Co. v. Fidelity & Deposit Co.*, 92 Wash. 52, 158 Pac. 740, where it is said:

"It is elementary law that a 'creditor may apply a payment voluntarily made by a debtor without any specific appropriation where there are two or more

debts, to whichever debt he pleases'. . . . The rule is not without its exceptions, one of which is stated in the text of 30 Cyc. 1237 as follows:

" 'Another exception to the rule that the creditor has the right to apply the payment obtains when the money with which the payment is made is known to the creditor to have been derived from a particular source or fund, in which case he cannot, without the consent of the debtor, apply it otherwise than to the exoneration of the source or fund from which it was derived.' "

Cases which hold to this rule that where money is derived from a particular source or fund, must be applied to the relief of the source or fund from which derived are as follows: *Boyd v. Jones,* 96 Ala. 305, 11 South. 405, 38 Am. St. 100; *Strickland v. Hardie,* 82 Ala. 412, 3 South. 40; *Lyon v. Bass,* 76 Ark. 534, 89 S. W. 849; *Massengale v. Pounds,* 108 Ga. 762, 33 S. E. 72; *Ellis v. Mason,* 32 S. C. 277, 10 S. E. 1069; *Brighton v. Doyle,* 64 Vt. 616, 25 Atl. 694; *Chaney v. Remey,* 19 Ky. Law 1258, 43 S. W. 235.

For the foregoing reasons we affirm the judgment of the superior court.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.