[No. 376-41389-1. Division One—Panel 2. October 19, 1970.]

THRIFTY SUPPLY CO. OF SEATTLE, INC., *Respondent*, v. DEVERIAN BUILDERS, INC., *et al.*, *Appellants*.

*Torbenson, Thatcher, Stevenson & Burns* and *J. R. Burns,* for appellants.

*Franco, Asia, Bensussen & Coe* and *Edward M. Bensussen,* for respondent.

UTTER, J.—Deverian Builders, Inc. (Deverian) and Washington Federal Savings and Loan Association (Washington Federal) appeal from a judgment foreclosing a materialmen's lien held by Thrifty Supply Co. of Seattle, Inc. (Thrifty), a plumbing supply firm.

The issues presented on appeal are whether an owner's

checks, which on their face are sufficient to pay the sums owing the materialman, but made payable jointly to the contractor and to the materialman, estop the materialman from enforcing a materialmen's lien; and whether these joint checks constitute payment, as a matter of law, to the materialman. We hold the elements of estoppel have not been established; that the question of whether payment by joint check discharged the obligation is one of fact, not law; and that payment by joint check does not discharge a materialmen's lien when the debt for which the check was issued was owing on the date of issuance, but not yet due, in the absence of an intent to discharge the obligation by all the parties.

Deverian owned certain real estate in King County upon which it was constructing an apartment complex. Washington Federal loaned Deverian funds in return for a mortgage on the real estate in question.

On August 24, 1967, Deverian contracted with Allied Plumbing and Heating of Los Angeles, Inc. (Allied) for the installation of plumbing in the apartments under construction. The contract contemplated progress payments, payable as specific phases of the work were completed. These payments were to include charges for labor and materials. Allied would bill Deverian for each phase of the work completed. After inspection and approval, Deverian would authorize Washington Federal to issue a check as payment to Allied.

Allied purchased materials from Thrifty necessary for the performance of its contract with Deverian. Allied was to be billed by Thrifty on a monthly basis on the twenty-fifth of each month. Payment was due on the tenth of the succeeding month to qualify for a cash discount.

In September, prior to Washington Federal's filing of their mortgage, Thrifty sent a materialmen's lien notice to Deverian and by letter requested checks issued to Allied include Thrifty as a joint payee.

Thrifty stated in the letter, "Your cooperation in this matter is appreciated and naturally is for your protection

against any future claims." Thereafter, Deverian paid invoices received from Allied by instructing Washington Federal to issue checks payable jointly to Allied and Thrifty.

The first invoice paid by Deverian after receiving notice from Thrifty was for $12,360. Deverian paid this invoice, for the billing period to September 25, on October 4, 1967, by instructing Washington Federal to issue two checks. One check was payable to Allied and Thrifty jointly for $7,053.82, the exact amount due Thrifty from Allied for materials purchased from August 25 to September 25; the other check was payable only to Allied in the amount of $5,306.18. Allied delivered the check for $7,053.82 to Thrifty in payment of its current account.

From October 4 to November 15, Deverian received four more invoices from Allied, paying each by instructing Washington Federal to issue joint checks payable to Allied and Thrifty in the various amounts due. On October 18, $10,600 was paid. Thrifty endorsed the check over to Allied and did not retain any funds from it, inasmuch as the check was received prior to their agreed monthly billing date. On November 6, two invoices were paid by issuing one check for $8,480 and another for $10,840. On November 17, $10,720 was paid. The November 6 check for $8,480 was substantially equal to the amount due to Thrifty from Allied for materials delivered from September 25 to October 25. Allied delivered this check to Thrifty in payment of its current account, the excess being returned to Allied and deposited in its own account.

The November 17 check for $10,720 was the last check issued to Deverian's order by Washington Federal. Prior to endorsing this check, Thrifty was advised by an officer of Deverian that Allied's performance was satisfactory and continuing and that a substantial payment would be made to Allied on or about December 1. Thrifty then endorsed the November 7 check and allowed it to be deposited in Allied's account.

Thrifty continued to deliver materials until the middle of December, when Allied ceased performance. At this time,

Allied owed Thrifty money for materials delivered from October 25 and Thrifty subsequently filed a materialmen's lien for $13,100.

Appellants' assignments of error are directed to two findings of fact and three conclusions of law. These assignments question whether there is evidence in the record to support the trial court's disputed findings and whether the disputed conclusions of law are supported by the findings. We have examined the record and find substantial evidence in it to support the challenged findings of fact.

■ It is argued by appellants that Thrifty is estopped to claim any rights under the lien statute. A lienholder may be estopped by his conduct from asserting his lien rights. *Nelson & Castrup v. Culver,* 94 Wash. 548, 162 P. 978 (1917); *Stewart Lumber Co. v. Unique Home Builders, Inc.,* 160 Wash. 273, 294 P. 988 (1931); and *Ostrander v. Okerlund,* 165 Wash. 18, 4 P.2d 828 (1931). The presence of the elements of estoppel, however, is a question of fact. The trial court's findings do not support a claim of estoppel and the record does not compel a finding the elements of estoppel are present as a matter of law.

Appellants claim Thrifty has been paid in full for all materials delivered. This argument is not well taken inasmuch as finding of fact 20, to which no error is assigned, specifically finds there is unpaid the sum of $13,200.

Appellants' final claim is that there was an agreement the funds received by Allied and Thrifty would be paid to the material account to prevent any future claims and that Washington Federal should be relieved of the effect of the lien foreclosure. This claim of appellants that Deverian's checks, including Thrifty as a joint payee, constituted payment to Thrifty for materials rendered, raises an issue of fact regarding the intent of appellants and Allied and Thrifty as to application of the payments.

■ Payment is established only with the receipt of funds by the creditors, coupled with an intention on behalf of both parties that the funds received constitute payment. *Fisher v. Seattle,* 55 Wash. 396, 104 P. 655 (1909); *Union*

*States Life Ins. Co. v. Bernert*, 161 Ore. 44, 87 P.2d 774 (1939). When an owner makes a check payable jointly to a contractor and a materialman, the payees should ordinarily understand the owner's intention is the money be used to discharge the lien rights of the materialman. However, the intention of the parties is a question of fact, and it is not necessarily improper for the contractor to retain the proceeds of such a joint check, keeping alive the materialman's claim. *B. & J. Constr. Co. v. Spacious Homes, Inc.*, 204 Cal. App. 2d 216, 22 Cal. Rptr. 41 (1962).

A purchaser of goods immediately owes the price of the goods, but the debt is not due until the day arrives that has been agreed upon as the date of payment. *Oregon Racing Comm'n v. Multnomah Kennel Club*, 242 Ore. 572, 411 P.2d 63 (1966).

The court found that "under the course of conduct that was then in effect, [Allied] didn't owe Thrifty until the end of the month." Although "owe" is used in the findings in the sense we mean "due," it is clear the court meant the parties had agreed payment was not due, even though the goods had been delivered, until a later, fixed time.

Where the parties, by express or implied agreement, consent to a different application of payments even though a check made out to joint payees is given, the court will effectuate this intent. *Pioneer Sand & Gravel Co. v. Grevstad*, 181 Wash. 239, 42 P.2d 438 (1935). Finding of fact 19 specifically held that:

> Both parties knew that the checks had to cover both labor and materials. This was inherent in what was going on on the job. Both parties knew that the checks were going partly to Allied Plumbing and partly to Thrifty Supply Co. In the course of their conduct dividing the checks confirmed what they obviously understood. Conduct on both sides was reasonable. The job was progressing.

This finding is supported by substantial evidence and in return supports the challenged conclusions of law.

The court's findings establish the conduct of Thrifty in releasing certain sums to Allied was consistent with the

intent of Deverian. The funds were disbursed by Washington Federal in the amounts and to the parties as specified by Deverian.

The statement in Thrifty's letter to Deverian that, "[y]our cooperation in this matter is appreciated and naturally is for your protection against any future claims" does not compel us to hold in favor of appellants. Nothing was stated therein which indicated the protection received by Deverian would be other than that which followed as a normal course of application of the rules of law governing payment by check to joint payees.

The case of *Cummings v. Erickson,* 116 Wash. 347, 199 P. 736 (1921), cited by appellants, does not support their position. The rule stated therein holds that where money is derived from a particular source, it must be applied to the relief of the source from which it is derived. The moneys paid by Washington Federal on behalf of Deverian were all applied by either Allied or Thrifty to debts accruing from the apartment complex which was the subject of Washington Federal's mortgage.

The judgment of the trial court is affirmed and the case remanded for the trial court to fix the attorney's fee for this appeal.

Horowitz, A. C. J., and Williams, J., concur.